UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————————x

"JOHN DOE,"                                                    **<u>COMPLAINT</u>**

    Plaintiff,

  -against-

THE NATIONAL RAMAH COMMISSION, INC.,
THE NATIONAL RAMAH COMMISSION OF THE
JEWISH THEOLOGICAL SEMINARY, and THE
JEWISH THEOLOGICAL SEMINARY,

    Defendants.

———————————————————————————————x

      Respectfully submitted by:

      Kevin T. Mulhearn, P.C.
      60 Dutch Hill Road, Suite 15
      Orangeburg, New York 10962
      Phone: (845) 398-0361
      Fax: (845) 398-3836
      Email: kmulhearn@ktmlaw.net

      *Attorneys for Plaintiff*

## JURISDICTION AND VENUE

1.   This Court has exclusive jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

2.   Venue is proper in the Southern District of New York pursuant to 18 U.S.C. § 1965 (c) and 28 U.S.C. § 1391(b), because the claims arise in this District and the Plaintiff resides in, transacts business in, or maintains a principal place of business in this District.

3.   Plaintiff, by and through his attorneys, Kevin T. Mulhearn, P.C., complaining of the Defendants, hereby alleges that:

## PARTIES

4.   Plaintiff, an individual man seeking to remain anonymous in view of the extremely personal nature of the allegations herein, is designated throughout this Complaint as "JOHN DOE," a pseudonym.

5.   JOHN DOE resides in the County of Westchester, State of New York.

6.   Defendant, the National Ramah Commission, Inc., at all material times, has owned, managed and operated numerous Camp Ramahs in the United States, including Camp Ramah in the Berkshires (Wingdale, New York).  Its principal place of business is 3080 Broadway, New York, New York 10027.

7.   Defendant, The National Ramah Commission of The Jewish Theological Seminary, is the coordinating body of the camping arm of Conservative Judaism, providing oversight and educational planning on behalf of the network of Ramah camps throughout North America and Israel.

8.   Upon information and belief, at all material times, Defendant, The National Ramah Commission of The Jewish Theological Seminary, oversees, operates, manages, owns

and controls the National Ramah Commission Inc., and all Camp Ramahs in the United States.
Its principal place of business is 3080 Broadway, New York, New York 10027.

9.      The Jewish Theological Seminary is a prominent institution of Jewish higher
education, training rabbis, throughout the United States.

10.     Upon information and belief, at all material times, Defendant, The Jewish
Theological Seminary, oversees, operates, manages, own and controls, The National Ramah
Commission, Inc., The National Ramah Commission of The Jewish Theological Seminary, and
all Camp Ramahs in the United States.  Its principal place of business is 3080 Broadway, New
York, New York 10027.

11.     Camp Ramahs are camps for Jewish children; these camps endeavor to, *inter alia,*
educate camp members as to Jewish traditions, history, and values—and thus have a significant
educational, not merely recreational, component.

12.     At all material times, each of the Defendants has received federal funding for
various educational programs at its Camp Ramah locations, including but not limited to Camp
Ramah in the Berkshires (Wingdale), State of New York.

13.     At all material times, therefore, each of the Defendants has been subject to
requirements of Title IX.

14.     In 1972, a Camp Ramah employee, Harvey Erlich, a camp counselor, repeatedly
sexually abused multiple Camp Ramah children, including Plaintiff.  (Erlich had previously
molested several boys in his bunk at bedtime).  Erlich's sexual assaults of numerous Camp
Ramah children were known to various high-ranking camp administrators and officials,
including high-ranking administrators and officials at Camp Ramah, The National Ramah
Commission, Inc., The National Ramah Commission of The Jewish Theological Seminary, and

3

The Jewish Theological Seminary. These administrators and official nevertheless failed to take action against Erlich, never reported him to child protective services or to law enforcement authorities, and—despite actual knowledge of his propensity to sexually and physically assault boys—never took any significant measures to prevent Erlich's future abuse of children.

15.     At all material times, Defendants and Camp Ramah administrators and officials consistently and cravenly defrauded prospective campers, campers, and their parents, by falsely representing that Camp Ramah (in the Berkshires) was a safe haven for their intellectual, emotional, and spiritual growth and enlightenment.

16.     Upon information and belief, in or about July 1972, Erlich sexually assaulted numerous Camp Ramah children, including a number of boys who were between ten and twelve years-old.

17.     Upon information and belief, soon thereafter, these assaults were reported to Camp Ramah officials, including Rabbi David Soloff, then Assistant Camp Director, and Rabbi Kenneth Greene, then Division Head for campers in JOHN DOE's age group, and other officials at The National Ramah Commission, Inc., The National Ramah Commission of The Jewish Theological Seminary, and The Jewish Theological Seminary.

18.     Both Rabbi Soloff and Rabbi Greene went on to pursue 40 year careers as important and esteemed leaders in the conservative Jewish movement, and served as spiritual leaders of several prominent congregations. Rabbi Soloff, in fact, served as Director of another Ramah Camp in Wisconsin for over 30 years.

19.     Nevertheless, Camp Ramah officials and administrators, including Rabbi David Soloff and Rabbi Kenneth Greene, and other officials at The National Ramah Commission, Inc., The National Ramah Commission of The Jewish Theological Seminary, and The Jewish

Theological Seminary, failed to take any action to protect its Camp Ramah children, including Plaintiff, from the predations of Erlich, a known sexual predator and abuser of boys.

20.     Camp Ramah officials, and other officials at The National Ramah Commission, Inc., The National Ramah Commission of The Jewish Theological Seminary, and The Jewish Theological Seminary, failed to report Erlich and his crimes to law enforcement officials; failed to fire Erlich; and failed to warn any Camp Ramah boys, including Plaintiff, of the known and severe dangers presented by the continued presence of Erlich on Camp Ramah camp grounds.

21.     As a direct result of the aforesaid acts and omissions of Camp Ramah, in or about August 1972, on several occasions, while Plaintiff was attending Camp Ramah, Erlich sexually assaulted and sodomized Plaintiff at Camp Ramah.

22.     After his assaults of Plaintiff, Harvey Erlich threatened Plaintiff, and told him, in words or substance, that he would face severe ramifications if he reported his sexual assaults to any authorities.

23.     In 1972, Camp Ramah was an extremely dangerous place, where a vicious, malicious, and sadistic sexual predator roamed free to pick off his innocent prey by relying upon the respect and reverence he commanded by virtue of his position of authority at the camp.

24.     Camp Ramah officials, and other officials at The National Ramah Commission, Inc., The National Ramah Commission of The Jewish Theological Seminary, and The Jewish Theological Seminary, moreover, deceived and defrauded many persons, including Plaintiff, by failing to warn parents, campers, and prospective campers, that a known danger (i.e., a known recidivist sex offender, existed at the camp and in fact held a position of employment with supervisory authority over young boys), and that Camp Ramah knowingly and willfully

permitted this known sexual predator to exercise his position of authority and used that position

to prey upon and sexually assault numerous Camp Ramah campers, including Plaintiff.

25.     Camp Ramah officials, and other officials at The Nationals Ramah Commission,

Inc., The National Ramah Commission of The Jewish Theological Seminary, and The Jewish

Theological Seminary never notified any parents, former campers, or campers, that it had

received any credible complaints from campers (or others) about Erlich sexual abusing boys at

Camp Ramah.

26.     Upon information and belief, Camp Ramah officials, and other officials at The

National Ramah Commission, Inc., The National Ramah Commission of the Jewish Theological

Seminary, and The Jewish Theological Seminary, ignored numerous sex abuse complaints

against Harvey Erlich, which were made to Camp Ramah administrators and officials, and other

officials at The National Ramah Commission, Inc., The National Ramah Commission of The

Jewish Theological Seminary, and The Jewish Theological Seminary in 1972, because

confronting these complaints, and responding to them with care, compassion, transparency, and

concern for humanity, would have harmed Camp Ramah's (and each of the Defendant's) name

and reputation.

27.     On or about November 1, 2012, Harvey Erlich was arrested in Ontario, Canada,

on charges of sexually assaulting an 11-year-old boy while in a synagogue and sexually

assaulting a second boy, age 13, in a home.

28.     In Canada, upon information and belief, there is no statute of limitations for the

sexual assaults of children.

29.     Under Jewish law, including Rabbinical laws that are strictly adhered to by

members of Orthodox Jewish communities, statutes of limitation do not exist.  Under Jewish

law, therefore, if a wrong was committed against a person, if someone was harmed, he will always have the right to seek justice.

30.    In 2015, Harvey Erlich pleaded guilty (in the Ontario Court of Justice) to three counts of gross indecency and admitted the facts of a fourth incident that date back to the 1970s and 1980s.

31.    At the time Harvey Erlich sexually assaulted these four boys (who ranged in age from 9 to 13), he was the conductor of several boys' choirs in the Jewish community.

32.    At this point, it is impossible to calculate precisely how many boys Harvey Erlich sexually assaulted and/or sodomized from 1972—during his employment at Camp Ramah—until his arrest in Canada in 2012.

33.    Upon information and belief, Defendants' protection of Harvey Erlich—after they knew that he was a sexual predator with a propensity to sexually abuse boys—led directly to the sexual assaults of numerous other boys by Harvey Erlich throughout the years.

34.    Indeed, Defendants' failure to notify law enforcement officials of Harvey Erlich's known criminal acts, permitted Harvey Erlich to obtain numerous positions of authority within the Jewish community in which he had unfettered access to vulnerable young boys, a number of whom—by his own admission—he sexually assaulted.

### COUNT I

35.    Plaintiff hereby repeats and realleges each of the allegations contained in paragraphs "1" through "34" hereinabove, as if each has been fully set forth at length.

36.    Title IX, 20 U.S.C. § 1681(a), provides in pertinent part that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

7

37.     Title IX regulates private entities and educational institutions which choose to receive federal funding.

38.     Title IX provides a private cause of action against a recipient of federal funds for discrimination based on sex, sexual harassment and sexual abuse.

39.     A single sexual assault constitutes severe and objectively offensive sexual harassment for Title IX purposes.

40.     Camp Ramah, and each of the Defendants, upon information and belief, were at all material times recipients of Federal financial assistance, and thus subject to Title IX, because, upon information and belief: (1) at all material times, the camp's attendees (and institutional entities) received federal financial aid; (2) at all material times, the camp, and Defendants, have been exempt from paying federal taxes (i.e., were tax exempt entities), and an exemption from federal taxes produced the same result as a direct federal grant (i.e., the camp possessed funds that otherwise would have belonged to the Government);and (3) the camp, and each of the Defendants, at various times, from 1972 to present, upon information and belief, received federal loans and other federal financial assistance for various construction, educational, and/or rehabilitation projects.

41.     Defendants are liable to the Plaintiff under Title IX because, upon information and belief, at all material times, they were deliberately indifferent to multiple acts of discrimination (i.e., Erlich's sexual assaults of boys), that were known to high-ranking camp officials (with remedial authority), and which occurred under their control, including on Camp Ramah premises and in its facilities, during camp hours, and during its normal hours of operation of its educational programs and activities.

42. Indeed, Defendants' deliberate indifference both directly caused Erlich's abuse of boys to occur and made male students, including Plaintiff, vulnerable to such abuse, and that abuse did occur and took place in a context subject to Camp Ramah's control and on camp grounds.

43. At all material times, for the reasons set forth herein, and upon information and belief, officials of Camp Ramah, and other officials at The National Ramah Commission, Inc., The National Ramah Commission of The Jewish Theological Seminary, and The Jewish Theological Seminary, who had authority to institute corrective measures on the camp's behalf, had actual notice of, and were deliberately indifferent to, Erlich's sexual misconduct.

44. Camp Ramah and their administrators, and other officials at The National Ramah Commission, Inc., The National Ramah Commission of the Jewish Theological Seminary, and The Jewish Theological Seminary, as stated above, had knowledge of a substantial risk of serious harm to campers, such as Plaintiff, in a context where multiple prior allegations of physical and sexual abuse were lodged against Erlich, and Erlich's proclivities for sexual abuse of boys, and his actual sexual abuse of boys, were well known to Camp Ramah administrators and officials.

45. Upon information and belief, at all material times, Erlich targeted, discriminated against, sexually harassed, and sexually abused Plaintiff because he was a boy, and Camp Ramah administrators and officials, and other officials at The National Ramah Commission, Inc., The National Ramah Commission of The Jewish Theological Seminary, and The Jewish Theological Seminary, had actual knowledge that Erlich was discriminating against, sexually harassing, and sexually abusing children because they were boys.

46. Camp Ramah's officials' (and other officials at The National Ramah Commission, Inc., The National Ramah Commission of The Jewish Theological Seminary, and

The Jewish Theological Seminary) response to Erlich's known discrimination constitutes deliberate indifference and was clearly unreasonable in light of all of the known circumstances.

## TITLE IX ACCRUAL ISSUES

47.     Federal law governs the determination of the point at which the limitations period begins to run on a Title IX suit.

48.     When, as in this case, the Defendants fraudulently conceal their own wrongdoing, to the extent that a plaintiff is not capable of reasonably ascertaining that the Defendants themselves injured him, the statute of limitations does not accrue until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, both the action and its cause, in other words, the Defendants' own misconduct.

49.     The theory of Plaintiff's Title IX claims against Defendants is not that Plaintiff was sexually abused by any persons hired by Camp Ramah, but that Defendants and their various officials and administrators created the circumstances under which another person, Erlich, sexually abused him.

50.     In other words, Plaintiff's Title IX claims against Camp Ramah is that if Defendants and their officials and administrators had taken action to prevent employees (i.e., Erlich) from abusing campers, Erlich would not have abused Plaintiff.

51.     Thus, at all material times, Plaintiff, did not know or should have known that his civil rights were violated at the time he was sexually abused when he was a minor camp attendee.

52.     The Plaintiff's abuse occurred, therefore, under circumstances created entirely by Defendants, and their officials and administrators.

53.     As Plaintiff did not know, and had no reason to know, that his civil rights had been violated by the Defendants, and did not have actual or constructive knowledge that high-ranking administrators and officials at Camp Ramah had actual knowledge of Erlich's propensity to abuse boys at Camp Ramah, until 2016, his federal Title IX claim did not accrue during the time period of his sexual abuse.

54.     Plaintiff's Title IX claims accrued, rather, in 2016, after Defendants' concealment, fraud, and sex abuse cover-up was discovered by Plaintiff, after he ascertained—after seeing an Online article—that Erlich had recently been arrested and convicted in Toronto, Canada, for sexually assaulting boys.

55.     As such, Plaintiff's Title IX claim is not barred by the applicable three year statute of limitations (CPLR § 214(5)).

## TITLE IX HARM AND DAMAGES

56.     As a direct and proximate result of Defendants' violation of Title IX, Plaintiff suffered horrendous sexual abuse and resulting life-long physical and emotional harm, as described as length herein.

57.     Since 1972, Plaintiff has suffered, and continues to suffer from, *inter alia,* extreme depression and severe emotional distress, anxiety, humiliation, drug and alcohol addiction and abuse problems, anger management issues, difficulty in maintaining trusting, loving relationships, marital issues (including a divorce), and difficulty in communicating with and relating to his children.

58.     Years ago, JOHN DOE was hospitalized twice after several serious suicide attempts. He has been treated by 10 psychopharmacologists over the last 30 years.

59.   During his college years, in the early 1980s, his emotional pain and suffering was so severe that—at the recommendation of his school's dean, he was compelled to take a one year break from college.  He thus graduated a year after his original college-entry class.

60.   All of this harm—to Plaintiff and other victims of Erlich—was reasonably foreseeable to the Defendants at the time of their violations of Title IX.

61.   The acts and omission of Camp Ramah and the other Defendants, particularly their violations of Title IX, demonstrated a reckless and conscious disregard of the rights, health, and safety of the rights of Plaintiff and other victims and potential victims of Erlich, and were so malicious, willful, and wanton, as to constitute a grievous injury to the public-at-large, as well as to the Plaintiff, and give rise to punitive damages.

62.   Plaintiff, pursuant to 42 U.S.C. § 1988, and related authority, also seek all reasonable legal fees, costs, and expenses, to be incurred in connection with his claim.

63.   As and for Count I, Plaintiff herein thus claims compensatory damages against each of the Defendants, jointly and severally in a sum not less than $10 Million, punitive damages in a sum not less than $10 Million, and reasonable attorneys' fees, costs, and expenses incurred in the prosecution of these claims.

## AD DAMNUM CLAUSE

WHEREFORE, based on the aforesaid, Plaintiff hereby demands judgment in his favor and against each of the Defendants, jointly and severally, as follows:

1.   As and for Count I, Violation of Title IX, a sum not less than $10 Million in compensatory damages, and a sum not less than $10 Million in punitive damages, and, pursuant to the Civil Rights Attorney's Fees Award Acts of 1976, 42 U.S.C. § 1988, and/or any other

appropriate authority, all reasonable attorneys' fees, costs, and expenses, incurred in the

prosecution of this case; and

2.      Any other, different or further relief as to this Honorable Court may seem just,

proper or necessary.

<u>**DEMAND FOR TRIAL BY JURY**</u>

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: August 31, 2016                          Respectfully submitted
       Orangeburg, New York

                                                **KEVIN T. MULHEARN, P.C.**


                                                _____
                                                KEVIN T. MULHEARN, ESQ.
                                                (KM-2301)
                                                *Attorneys for Plaintiff, "John Doe"*
                                                60 Dutch Hill Road, Suite 15
                                                Orangeburg, New York 10962
                                                Phone: (845) 398-0361
                                                Fax: (845) 398-3836
                                                Email: kmulhearn@ktmlaw.net