UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/7/18

"JOHN DOE" and "JOHN DOE II",

                Plaintiffs,

-against-

THE NATIONAL RAMAH COMMISSION, INC., THE NATIONAL RAMAH COMMISSION OF THE JEWISH THEOLOGICAL SEMINARY, THE JEWISH THEOLOGICAL SEMINARY, RABBI DAVID SOLOFF, RABBI KENNETH GREENE, RABBI MELVIN N. SIRNER, and RABBI SHELDON DORPH,

                Defendants.

16-cv-6869 (NSR)

OPINION AND ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiffs John Doe and John Doe II ("Plaintiffs"), proceeding anonymously, commenced this action on August 31, 2016, and thereafter filed an Amended Complaint on January 12, 2017 pursuant to 20 U.S.C. § 1681 for alleged violations of Title IX of the Education Amendments of 1972 ("Title IX"). (*See* Amended Complaint ("Am. Compl.") (ECF No. 13) ¶¶50-84.) Plaintiffs also assert violations of 18 U.S.C. § 1964(c),(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), commonly referred to as Civil RICO. (*Id.* ¶¶85-135.) This lawsuit is asserted against The National Ramah Commission, Inc., owners of numerous Camp Ramahs (the "Ramah Commission Inc."), The National Ramah Commission of the Jewish Theological Seminary, owner of the Ramah Commission Inc. (the "Ramah Commission"), The Jewish Theological Seminary, owner of the Ramah Commission Inc., the Ramah Commission, and the Camp Ramahs (the "Jewish Theological Seminary"), Rabbi David Soloff ("Rabbi Soloff"), Rabbi Kenneth Greene ("Rabbi Greene"), Rabbi Melvin N. Sirner ("Rabbi Sirner"), and Rabbi Sheldon Dorph ("Rabbi Dorph") (collectively, the "Defendants").

1

Presently before the Court is Defendants' motion to dismiss the Amended Complaint for failure to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Defendants' Motion"). (*See* Defendants' Brief in Support of the Motion to Dismiss ("Defs. Br.") (ECF No. 17), at 4-5.)[1] For the following reasons, Defendants' Motion is GRANTED.

## FACTUAL BACKGROUND

The following facts are taken from Plaintiffs' Amended Complaint and are accepted as true for purposes of this motion.[2]

Plaintiffs, proceeding in this action anonymously, were both campers at Camp Ramah in the Berkshires, Wingdale, New York during the summer of 1971.[3] (*See* Am. Compl. ¶¶3-5, 7.)

Non-party Harvey Erlich ("Erlich") was employed as a camp counselor-in-training at Camp Ramah at the relevant dates, including the summer in which both Plaintiffs attended the Camp. (*See* Am. Compl. ¶19.) Plaintiffs contend that Erlich molested several boys at Camp Ramah and that "various high-ranking camp administrators and officials", including the Defendants, knew of his conduct, but failed to take any remedial action. (*Id.* ¶¶ 21-22.) Despite knowledge of Erlich's conduct, Defendants "never reported him to child protective services or to law enforcement authorities, and—despite actual knowledge of his propensity to sexually and physically assault boys—never took any significant measure to prevent Erlich's future abuse of children." (*Id.* ¶22.)

Thereafter, Defendants repeatedly represented "orally and through interstate and intrastate mailings of correspondence, brochures, and advertisements . . . that Camp Ramah (in the

---

[1] Plaintiffs filed two versions of their brief in opposition to Defendants' Motion ("Plf. Br."). (*See* ECF Nos. 20-21.) The only noticeable difference between the two iterations of Plaintiffs' Opposition is that the first contains no table of contents or table of authorities, while the second does. For purposes of this Opinion, all citations to Plaintiffs' Opposition will be to the complete version, docketed at ECF No. 21.
[2] The Court assumes the truth of the facts alleged in Plaintiff's Complaint for purposes of this motion only. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[3] While there are multiple Camp Ramahs across the United States, "Camp Ramah", as discussed in this Opinion, will refer to the one located in Wingdale, New York.

Berkshires) was a safe haven for [prospective campers'] intellectual, emotional, and spiritual growth and enlightenment." (*Id.* ¶23.) Such materials were disseminated to Plaintiffs, as well as other families and children, from 1970 through 2016, in consecutive years. (*Id.* ¶24.)

Erlich's sexual abuse of the campers allegedly began on June 28, 1971 when he sexually assaulted numerous Camp Ramah children. (*Id.* ¶25.) Soon thereafter, such conduct was "reported to Camp Ramah officials", including some of the Defendants. (*Id.* ¶26.) Defendants, however, failed to take any action against Erlich. (*Id.* ¶¶29-30.)

As no disciplinary action was taken against Erlich, he was still employed as a counselor-in-training for the remainder of the summer of 1971, and from approximately July 7, 1971 through July 23, 1971, he assaulted John Doe II. (*Id.* ¶31.) Though Erlich threatened John Doe II not to report the abuse, on July 23, 1971, John Doe II complained to Rabbi Greene, Rabbi Sirner, and Rabbi Dorph. (*Id.* ¶¶33-35.) Despite his complaints, no disciplinary action was taken against Erlich and he was permitted to continue working at Camp Ramah as a counselor-in-training. (*Id.* ¶¶36-39.)

Thereafter, in August of 1971, John Doe I was sexually assaulted by Erlich. (*Id.* ¶32.) As he had done with John Doe II, Erlich threatened John Doe I not to say anything or he would face "severe ramifications." (*Id.* ¶33.) It was therefore clear that in 1971, Camp Ramah was an "extremely dangerous place." (*Id.* ¶37.) John Doe I did not report his abuse to anyone in 1971. In 2004, however, John Doe I sent an email to Rabbi Cohen (the "2004 Email"), the Director of the Ramah Commission Inc., regarding the sexual assault he suffered. (*See* Declaration of Scott H Casher in Support of Defendants' Motion ("Casher Decl.") (ECF No. 18), Ex. C.)[4] Therein,

---

[4] As indicated *infra* I.B.2., this Court can properly consider the 2004 Email on this motion without converting it into one for summary judgment, as it was relied on by Plaintiffs in crafting the complaint, though apparently explicitly ignored, *see Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006), and Plaintiffs do not contest this Court's consideration of the document in rendering its decision or otherwise object to the authenticity of this document, (*see* Plf. Br. at 22.)

Plaintiff noted that in August 1971, when he was 12 years old, he endured sexual abuse from Erlich. (*Id.*) He also wrote that "Camp Ramah is negligent for preventing this predator from victimizing [u]nsuspecting campers," that Erlich's conduct was "recognized by other campers in his bunk", that "[t]here were several adults in camp who had the responsibility [t]o manage the staff", and that Rabbi Soloff and Ken Silver, identified as "ranking management", "actually walked in on [Erlich with John Doe I] as an act of molestation was in process in a remote place", but "walked away from the scene." (*Id.*) He further noted that he wanted to "see that those responsible are punished and that [he] is [c]ompensated for [his] grief", and to do so, he planned "to start legal action in this matter." (*Id.*)

In 2012, Erlich was arrested in Canada "on charges of sexually assaulting an 11-year-old boy", (*see* Am. Compl. ¶43), and pled guilty to three counts of gross indecency, as well as "admitted the facts of a fourth incident that date[d] back to the 1970s and 1980s," (*id.* ¶45.) In November of 2016, Plaintiffs spoke and John Doe I learned that John Doe II had reported his sexual abuse to high-ranking officials. (*Id.* ¶69.) Plaintiffs contend that, until 2016, John Doe I had "no idea whatsoever that Erlich had abused any boys other than him, or that Defendants knew of Erlich's propensity to sexually abuse boys prior to his abuse of" John Doe I. (*Id.* ¶71.)

## STANDARD OF REVIEW

Dismissal is warranted on a 12(b)(6) motion unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. A motion to dismiss

4

will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Court's review is typically constrained to those allegations said to be within the four corners of a plaintiff's complaint – that is, the allegations in the complaint itself, any documents attached thereto, or any documents incorporated by reference. [cite]. A court may also consider documents that are considered public record, *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 68 F. Supp. 3d 530, 536 (S.D.N.Y. 2014), "documents that the plaintiff relied on in bringing suit and that are either in plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken", *Avila v. Comm'r of Soc. Sec.*, No. 15-CV-2456 (JGK), 2016 WL 1562944, at *1 (S.D.N.Y. Apr. 18, 2016) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)).

## DISCUSSION[5]

### I. Title IX

#### A. Retroactivity

Defendants contend that Plaintiffs' Title IX claims are ripe for dismissal because the allegedly unlawful conduct occurred before Title IX was enacted. (*See* Defs. Br. at 5-6.) Plaintiffs' argument that Defendants conflate the difference between accrual and occurrence misses the mark. (*See* Plfs. Br. at 24-25.) This argument pertains to retroactivity of Title IX, not the statute of limitations; Defendants argue that, at the time the unlawful conduct occurred, there was no legally cognizable right to relief. This Court agrees.

---

[5] Defendants ask this Court to disregard Plaintiffs' Opposition, as it was untimely served. (*See* Defendants' Reply in Further Support of their Motion ("Defs. Reply") (ECF No. 22) at 1-2.) Specifically, Defendants argue that this Court directed Plaintiffs to serve their Opposition on April 6, 2017, but it was not served until April 7, 2017, and a final version served on April 10, 2017. (*Id.* at 2 n.1.) Defendants do not provide evidence in support of this contention. Moreover, the parties did not serve the Court with courtesy copies of their documents on the dates that same were served; instead, two binders containing courtesy copies of all motion-related papers were received by this Court on June 2, 2017. This Court declines to engage in an exercise of ascertaining when Plaintiffs served Defendants and will therefore consider the arguments asserted in Plaintiffs' Opposition in rendering the following Opinion.

Title IX was enacted as part of the Education Amendments of 1972. *See* 20 U.S.C. § 1681(a); *see Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 167 (2005). The statute provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, being denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). Title IX protects against sex discrimination, and also covers incidents of sexual harassment. *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 88-89 (2d Cir. 2011). To establish liability, a plaintiff must demonstrate that the educational facility,[6] "with authority to address the alleged discrimination and to institute corrective measures[,] had actual knowledge of the discrimination and failed to adequately respond." *Id.* at 89 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998)) (internal quotations omitted). An inadequate response can be shown where the educational facility "provides no response or if it provides a response that 'amounts to deliberate indifference to discrimination.'" *Id.* (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999)) (alterations omitted).

The Supreme Court has time and again reiterated the law's disfavor toward retroactive legislation. The Court has noted that due to the Legislature's broad powers and "responsivity to political pressures", "congressional enactments . . . will not be construed to have retroactive effect unless their language requires this result." *I.N.S. v. St. Cyr*, 533 U.S. 289, 315-16 (2001); *see also Vartelas v. Holder*, 566 U.S. 257, 266 (2012) (citng *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994) for proposition that "courts read laws as prospective in application unless Congress has unambiguously instructed retroactivity"); *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 946 (1997) (noting "presumption against retroactive legislation"). Such a rule is "deeply rooted" in this nation's jurisprudence and is grounded in the policy that "[e]lementary

---

[6] The parties do not dispute whether Camp Ramah falls into the category of "educational facility" subject to Title IX.

6

considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *I.N.S.*, 533 U.S. at 316. Indeed, the Court has explicitly held that:

> [w]hen a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Landgraf*, 511 U.S. at 280.

Title IX does not apply retroactively; Congress's intent is clear from the statute's legislative history. When it was enacted, Congress determined that it, as well as any and all other amendments contained in the "Education Amendments of 1972", would "become effective after June 30, 1972." *See* Pub. L. 92-318, 86 STAT. 236. Plaintiffs' Complaint amounts to two variations on a Title IX claim: (1) Defendants caused John Doe II to be sexually assaulted by Erlich, as they had prior knowledge of his predatory predilections, but did nothing; and (2) Defendants were deliberately indifferent because, after John Doe II complained of Erlich's conduct, they failed to take remedial action, which led to John Doe I's assault. (*See* Plf. Br. at 2; Am. Compl. 62-74.) In both stuations, Defendants' failures to remediate occurred no later than the summer of 1971, before Congress enacted Title IX. Consequently, at the time, Defendants' conduct was not actionable. In light of the legislative history, this Court declines to hold that Title IX should be applied retroactively to cover Defendants' conduct in 1971. Defendants Motion is therefore granted in this regard and Plaintiffs' Title IX claims are dismissed with prejudice.

### B. Statute of Limitations

Assuming Title IX was applied retroactively, Defendants also argue that the statute of limitations bars Plaintiffs' claims, as they should have been filed before 1980. (*See* Defs. Br. at 6-11.) In opposition, Plaintiffs argue that this Court should apply the discovery rule of accrual and find that the statute of limitations began to accrue no earlier than 2016. (*See* Plfs. Br. at 10-13.) Plaintiffs' claims are time-barred under either rule.

Statutes of limitations are properly considered on a 12(b)(6) motion where "the circumstances are 'sufficiently clear on the face of the complaint and related documents as to make the time-bar ruling appropriate on a motion to dismiss.'" *Wiedis v. Dreambuilder Investments, LLC*, 268 F. Supp. 3d 457, 465 (S.D.N.Y. 2017) (quoting *Arco Capital Corps. Ltd. v. Deutsche Bank AG*, 949 F. Supp. 2d 532, 543 (S.D.N.Y. 2013)); *see also Avila*, 2016 WL 1562944, at *1 ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss."). As the allegedly unlawful conduct occurred outside of the relevant statute of limitations, this Court may properly consider the Defendants' affirmative defense as to Title IX.

"Title IX does not contain a statute of limitations." *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004). Consequently, federal courts borrow the "the most appropriate or analogous state statute of limitations." *Id.* (citing *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987)). The Second Circuit thus borrows New York's personal injury statute of limitations, which is three years "from the time the cause of action accrued." *Id.* (citing N.Y. C.P.L.R. § 214(5)). If the person entitled to bring a cause of action is an infant, the limitations period is tolled until such time as that individual reaches the age of eighteen. *See* N.Y. C.P.L.R. § 208.

The decisive issue before this Court is the date on which the cause of action accrued. Defendants argue that it accrued in 1977, approximately when the Plaintiffs turned 18 years old,[7] (*see* Defs. Br. at 7), but Plaintiffs contend, relying on the discovery rule, that it was not until November 2016, as at any point prior, the Defendants' alleged concealment of the conduct prevented their awareness of the causes of action asserted in their Amended Complaint, (*see* Plfs. Br. at 17.)

### 1. *Diligence-Discovery Rule of Accrual*

"[A] claim generally accrues once the plaintiff knows or has reason to know of the injury which is the basis of the action." *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) (quoting *Singleton v. New York*, 632 F.2d 185 (2d Cir. 1980)). Where there is fraud or concealment of the injury, the "so-called diligence-discovery rule of accrual applies." *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998). The discovery rule finds its roots in fraud cases and is considered an exception to the "general limitations rule." *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 644 (2010); *see also TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001) (The discovery rule holds that "equity tolls the statute of limitations in cases of fraud or concealment."). Consequently, "accrual may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause." *Kronisch*, 150 F.3d at 121. Such a rule only requires:

> knowledge of, or knowledge that could lead to, the basic facts of the injury, *i.e.*, knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it . . . . [and] will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice.

---

[7] The Amended Complaint does not indicate Plaintiffs' ages at the time they attended Camp Ramah, except it alleges that the boys that were sexually assaulted by Erlich in 1971 were between the ages of 10 and 13. (*See* Am. Compl. ¶25.) Moreover, the 2004 Email indicates that John Doe I was 12 at the time he was assaulted by Erlich in 1971. (*See* Casher Decl., Ex. C.) For purposes of this Opinion, the Court considers that, based on the 2004 Email, Plaintiffs reached the age of 18 by 1977. The exact dates on which they turned 18 need not be ascertained to decide this motion.

9

*Id.* (quoting *Guccione v. United States*, 670 F.Supp. 527 (S.D.N.Y. 1987)); *see also Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 438 (S.D.N.Y. 2014) ("*Twersky*") (noting that the standard on the discovery rule is "inquiry notice" of the "injury, namely, when [plaintiff] discovers or reasonably should have discovered the . . . injury").

The Supreme Court has made clear however, that, despite a copious number of district courts' decisions to "generally apply a discovery accrual rule when a statute is silent on the issue," it has not sanctioned such decisions nor "adopted that position as [its] own." *TRW Inc.*, 534 U.S. at 27. Title IX is silent on the issue of accrual and neither the Supreme Court nor the Second Circuit has explicitly held that the discovery rule should apply to accrual of these claims.

The standard accrual rule holds that a claim accrues "when the plaintiff has a complete and present cause of action", *see Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 9 (2d Cir. 2014) (summary order) ("*Twersky Appeal*")[8]; *i.e.* when the cause of action "comes into existence," *id.* Under this rule, both Plaintiffs' Title IX claims are time-barred. The Amended Complaint explicitly alleges that, prior to Plaintiffs' sexual abuse, Erlich's sexual assaults of numerous campers "were known to various high-ranking camp administrators and officials", (*see* Am. Compl. ¶21), but the administrators "failed to take action against Erlich, [and] never reported him to child protective services or to law enforcement authorities", (*id.* ¶22.) Consequently, the claims accrued in 1971, as the Defendants had knowledge of the prior sexual abuses, did nothing about it, and Plaintiffs

---

[8] In *Twersky* and the *Twersky Appeal*, Judge Koetl and the Second Circuit, respectively, tackled the issue of statute of limitations with regard to Title IX. The facts before both courts are largely similar to the facts presented in this case: plaintiffs were sexually abused when they were infants; such sexual abuse occurred while the plaintiffs were in the defendants' care; the alleged sexual abuse dates back decades; defendants knew about the abuse and did nothing; and both are brought pursuant to Title IX against the institutions and administrators, not the sexual abusers. (*Compare* Am. Compl. ¶¶16-49 *with Twersky*, 993 F. Supp. 2d at 432-36.)

In their Reply, Defendants contend that Plaintiffs' arguments regarding the discovery rule asks this Court to "ignore the binding Second Circuit Court of Appeals decision", *Twersky*. (*See* Defs. Reply at 3.) For the record, the Second Circuit's opinion in the *Twersky* Appeal was an unpublished summary order which "has no precedential effect." *Lebron v. Sanders*, 557 F.3d 76, 77 n.2 (2d Cir. 2009); *Wiedis*, 268 F. Supp. 3d at 466. Summary orders are, nevertheless, considered persuasive authority, and may be "instructive to district courts in resolving particular disputes . . . ." *Wiedis*, 268 F. Supp. 3d at 446. This Court is inclined to follow the Second Circuit's *Twersky* opinion, as the facts are strikingly similar to the ones presented here.

were sexually abused as a result thereof; the claims were tolled until Plaintiffs turned 18 in 1977 and thereafter expired in 1980. *See Twersky*, 993 F. Supp. 2d at 439 (standard rule barred claims of plaintiffs who were sexually assaulted between 1971 and 1992 where educational facility had knowledge of the conduct during the time frame when it occurred, but the lawsuits were not filed until 2013). Therefore these claims are over 30 years late.

This Court, like the *Twersky* court, declines to decide whether the discovery rule applies to Title IX actions, because even if it did, the claims are time-barred.

2. *John Doe I*

John Doe I's Title IX claims would also be time-barred under the discovery rule. Critical to this determination is whether the 2004 Email can be properly considered on this 12(b)(6) motion; it can.

As indicated above, such attachments are properly considered if the document is incorporated in the complaint by reference, integral to the complaint, or a document of which a court can take judicial notice. *See Bristol v. Nassau Cnty.*, 685 F. App'x 26, 28 (2d Cir. 2017) (summary order) (citing *Stachr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406 (2d Cir. 2008); *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46 (2d Cir. 2016)). To consider the document, the Court must determine that "the plaintiff *rel[ied]* on the terms and effect of the document in drafting the complaint . . . .; mere notice or possession is not enough." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006). The integral exception is rooted in the idea of fairness and notice. *See Chambers*, 282 F.3d at 153 (noting that "generally, the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered"). Such a concern is alleviated where "plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint . . . ." *Id.* (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*,

11

949 F.2d 42, 47 (2d Cir. 1991)). Moreover, the exception exists to "prevent[] plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting" such as where a document, "read in its entirety, would undermine the legitimacy of the plaintiff's claim." *Global Network Commc'ns*, 458 F.3d at 157; *see also Grosz v. Museum of Modern Art*, 772 F. Supp. 2d 473, 497 (S.D.N.Y. 2010) (citing *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 f.2d 759, 762 (2d Cir. 1991) for proposition that plaintiffs' "failure to include matters of which as pleaders they had notice and which were integral to their claim- and that they apparently most wanted to avoid-may not serve as a means of forestalling the district court's decision on the motion").

Preliminarily, Plaintiffs do not contest the authenticity of the 2004 Email, do not contest the facts contained therein, or otherwise argue that this Court should not consider this document at the present time. (*See* Plfs. Br. 22-24.) Instead, Plaintiffs argue that the 2004 Email undercuts Defendants' inquiry notice argument, thereby impliedly admitting to the authenticity of this document and opening the door for this Court to consider it on this motion. (*Id*. at 24.)[9]

As this situation is precisely the kind the integral exception was created to avoid—*i.e.* the crafty drafting of complaints to be impervious to 12(b)(6) motions, the Court finds the 2004 Email integral to the Amended Complaint. This document would have necessarily been relied upon in drafting the Amended Complaint, insofar as it demonstrates when John Doe I became aware that he had a cause of action against Defendants. It is particularly relevant here, as Plaintiffs' Amended Complaint contains a section devoted to allegations regarding the statute of limitations, the accrual

---

[9] To the extent Plaintiffs argue that the 2004 Email demonstrates only that John Doe I was merely complaining about his sexual assault, that he wanted those responsible to be punished, and that he still was unaware that the Defendants had actual knowledge of his sexual assault, this Court is unpersuaded. (*See* Plfs. Br. at 22-24.) The language of the 2004 Email is clear, Plaintiff explicitly told the recipient of the email that he thought the Camp was negligent and should be held accountable. He further informed that he intended to "start legal action". (*See* Casher Decl., Ex. C.) Such information, considered along with the fact that he claims others had known of Erlich's conduct, and certain "ranking management" actually witnessed an act of sexual assault, were sufficient critical facts to put John Doe I on inquiry notice that he had a legal claim against the Defendants, and could have, under reasonable diligence, sought legal advice and obtained the requisite information to proceed with this claims within the limitations period.

of the causes of action, and explicitly argues that John Doe I had "no idea whatsoever that Erlich had abused any boys other than him, or that Defendants knew of Erlich's propensity to sexually abuse boys" prior to 2016. (*See* Am. Compl. ¶71.) The 2004 Email directly contradicts that contention. (*See* Casher Decl., Ex. C (noting that "other campers" knew; Camp Ramah was "negligent for preventing this predator from victimizing [u]nsuspecting campers; the ranking management "walked in on . . . an act of molestation" between Erlich and John Doe I)).

Moreover, the 2004 Email demonstrates that John Doe I had the critical facts regarding his Title IX cause of action at the time he sent it, insofar as he wrote that "Camp Ramah is negligent for preventing this predator from victimizing [u]nsuspecting campers", that "his activities were recognized by other campers in the bunk", that "several adults in camp [] had the responsibility to manage the staff", and even that several of the defendants actually witnessed the sexual assault of John Doe I by Erlich and merely walked away. (*See id.*) Consequently, John Doe's statute of limitations, under the discovery rule, expired no later than 2007, approximately 9 years before Plaintiff instituted this action. John Doe I's claims under Title IX must be dismissed.

### 3. *John Doe II*

Under the discovery rule, John Doe II's claims for Title IX are likewise time-barred. John Doe II contends to the contrary because he was not aware that any other campers informed management that Erlich was sexually abusing them until Erlich's arrest in 2016. (*See* Plfs. Br. at 13.) Plaintiffs' argument rests on the assumption that a Title IX claim does not lie unless Plaintiffs were aware that the Defendants knew about Erlich's predilections prior to their abuse. This Court disagrees. Title IX provides a cause of action for plaintiffs who contend that the educational facility caused their injury and also, on a theory that upon notice to the facility, they failed to take remedial action. *See Papelino*, 633 F.3d at 89 (quoting *Gebser*, 524 U.S. 274 for proposition that Title IX claim lies where facility "had actual knowledge" and "failed to adequately respond" and

*Davis*, 526 U.S. at 649, for proposition that "no response" is sufficient to "amount[] to deliberate indifference to discrimination"). The allegedly unlawful conduct by Defendants, need not predate the sexual assault of John Doe II. John Doe II's report provided the Defendants with actual knowledge of the assault and they thereafter failed to take any remedial action whatsoever, instead allowing Erlich to continue working at Camp Ramah. Such information is sufficient for purposes of accrual of Title IX. At that moment, John Doe II knew Defendants had actual knowledge of Erlich's conduct, who had injured him (not just who had assaulted him), and what they had done— *i.e.* took no action against Erlich. *Compare with Twersky Appeal*, 579 F. App'x at 9-10 (noting that when plaintiffs left YUHS "they were unquestionably aware of (1) their injuries, (2) their abusers' identities, and (3) their abusers' prior and continued employment at YUHS"). Consequently, his Title IX claim began running when he left Camp Ramah, was tolled until he turned 18 in 1977, and expired thereafter in 1980.

## C.  Individual Defendants

Numerous courts within this Circuit have held that Title IX does not give rise to individual liability. *Miotto v. Yonkers Public Sch.*, 534 F. Supp. 2d 422, 426 (S.D.N.Y. 2008) (collecting cases and holding likewise); *Zamora v. N. Salem Cent. Sch. Dist.*, 414 F. Supp. 2d 418, 423 (S.D.N.Y. 2006) (dismissing Title IX claims against individual defendants); *see also Romero v. City of New York*, 839 F. Supp. 2d 588, 617 (E.D.N.Y. 2012) (noting tendency of courts to find no individual liability under Title IX). Likewise, the Supreme Court has held that Title IX creates liability for institutions and programs that receive federal funds, "but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009). As Plaintiff have not demonstrated that any of the individual defendants received federal funding, a requirement imbedded in Title IX itself, and has not even opposed Defendants' argument that Title IX does not

give rise to individual liability, this Court finds no reason to deviate from other courts in this Circuit. Claims against the individual defendants arising under Title IX are hereby dismissed.

## II. **Civil RICO**

Defendants also argue that Plaintiffs' Civil RICO claims are ripe for dismissal as the relevant statute of limitations has already expired. (*See* Defs. Br. at 12-25.) Plaintiffs wholly fail to oppose this portion of Defendants' Motion. (*See* Plf. Br. at 6-25.) Indeed, Plaintiffs spend the entirety of their Opposition arguing that the claims under Title IX are timely and should not be dismissed. (*Id.*) Consequently, in reply, Defendants ask this Court to consider the Civil RICO claims abandoned and summary dismiss them. (*See* Defs. Reply at 2-3.)[10]

Numerous courts in this District have held that, on a motion to dismiss, a claim is abandoned if a plaintiff fails to address or oppose a defendant's arguments requesting dismissal of that claim. *City of Perry, Iowa v. Proctor & Gamble Co.*, 188 F. Supp. 3d 276, 286 (S.D.N.Y. 2016); *Moore v. City of New York*, 15-CV-6600 (GBD) (JLC), 2018 WL 3491286, at *14 (S.D.N.Y. July 20, 2018) (dismissing state law claims regarding which plaintiff failed to oppose the arguments for dismissal), *report and recommendation adopted* 2018 WL 4043145 (Aug. 7, 2018); *Tulino v. City of New York*, No. 15-CV-7106 (JMF), 2016 WL 2967847, at *2 (S.D.N.Y. May 19, 2016) (dismissing claims unaddressed in plaintiff's opposition as abandoned); *Dawson v. City of New York*, No. 13-CV-5956 (JMF), 2014 WL 5020595, at *3 (S.D.N.Y. Oct. 8, 2014). Plaintiffs' Civil RICO claims are therefore deemed abandoned and dismissed with prejudice.

### A. **Statute of Limitations**

Even if this Court did not consider Plaintiffs' RICO claims abandoned, they would still be ripe for dismissal as the statute of limitations has expired. RICO does not contain "an express

---

[10] Defendants also argue that Plaintiffs lack standing to assert Civil RICO and otherwise fail to properly state cognizable Civil RICO claims. (*See* Defs. Br. at 12-25.) In light of this Court's decision that the claims are abandoned and otherwise time-barred, in an exercise of judicial restraint, it declines to consider the remainder of Defendants' arguments.

statute of limitations for actions brought under its civil enforcement provision." *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 146 (1987). Though some statutes without an express statute of limitations borrow from the relevant state's limitations period for the most analogous cause of action, the Supreme Court explicitly held that Civil RICO should have "a uniform statute of limitations." *Id.* at 149. Such limitations period for all Civil RICO claims is four years. *Id.* at 156; *see also Ceres Partners v. GEL Assocs.*, 918 F.2d. 349, 356 (2d Cir. 1990).

A Civil RICO claim accrues on the date that "plaintiff discovers or should have discovered" his injury by defendant. *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 158 (S.D.N.Y. 2014); *Lederhouse v. Landau Arnold Laufer LLP*, No. 15-CV-8668 (AT) (SDA), 2018 WL 3300653, at *5 (S.D.N.Y. Mar. 2, 2018). To be sure, the inquiry looks to the date "when a defendant commits an act that injures the plaintiff, not when the plaintiff has both suffered an injury and discovered the pattern of alleged RICO activity." *Prince v. Dicker*, 29 F. App'x 52, 55 (2d Cir, 2002) (summary order) (citing *Rotella v. Wood*, 528 U.S. 549 (2000)). Critically, "[a] RICO plaintiff's ability to investigate the cause of his injuries is no[t] . . . impaired by his ignorance of the underlying RICO pattern . . . ." *Rotella*, 528 U.S. at 556-57.

Nevertheless, the Second Circuit has "recognized a 'separate accrual rule' whereby a new claim accrues, triggering a new four-year limitations period, each time plaintiff discovers, or should have discovered, a new injury caused by the predicate RICO violations." *Angermeir*, 14 F. Supp. 3d at 158 (quoting *Bingham v. Zolt*, 66 F.3d 553 (2d Cir. 1995)) (internal quotations omitted). A plaintiff must demonstrate that he suffered a new injury – *i.e.* "separate and independent injuries" that "continue to flow from the underlying RICO violations." *Id.* Assuming a plaintiff can avail himself of this "separate accrual rule", he may "wait indefinitely to sue, but may then win compensation only for injuries discovered or discoverable within the four-year window before suit was filed . . . ." *Bingham*, 66 F.3d at 560.

Plaintiffs' Civil RICO claims are time-barred. Plaintiffs' Amended Complaint vaguely alleges that Defendants sent "interstate mailings, in 1970, 1971, and every year thereafter through 2016" which "deliberately and fraudulently concealed . . . that the Defendants knew that Erlich had sexually abused Camp Ramah attendees in 1971." (*See* Am. Compl. ¶93.) To the extent Plaintiffs are attempting to allege that they were injured by the Defendants' alleged mail fraud, and that the statute of limitations thus began to accrue in 2016, such allegations must fail. First, Plaintiffs fail to identify how they were injured by receiving the allegedly unlawful mailings. Even assuming this conduct constituted their injury, the Supreme Court has made clear that the statute of limitations tolls on the date a plaintiff is injured by a defendant, not the date a plaintiff discovers a pattern of racketeering. *See Rotella*, 528 U.S. at 556-57. The very first time Plaintiffs received a mailing about Camp Ramah attesting to the camp's "safe, nurturing and positive environment", (*see* Am. Compl. ¶91), knowing that they had been sexually assaulted and no action was taken against Erlich, they were on inquiry notice to investigate their RICO claims. Plaintiffs thus had "information sufficient to alert a reasonable person to the probability that he has been misled." *Lederhouse*, 2018 WL 3300653, at *5 (noting that inquiry notice applies in cases predicated on fraud). Such mailings constituted the proverbial "storm warnings" courts in this Circuit have considered sufficient for accrual of the statute of limitations. *See Johnson v. Nextel Commc'ns*, No. 07-CV-8473 (GBD) (KNF), 2017 WL 4326052, at *5 (S.D.N.Y. Sept. 19, 2017) (noting "storm warnings" exist where "a person of ordinary intelligence would consider it 'probable' that fraud had occurred"). Assuming the first time Plaintiffs received the mailings after the sexual assaults was 1972, the statute of limitations would have expired in 1981.[11]

The Second Circuit's "separate accrual rule" would not apply here. Though Plaintiffs have alleged that Defendants engaged in mail fraud in 1970, 1971, 2016, and every year in between,

---

[11] As indicated above, the Plaintiffs were both infants under the law until approximately 1977.

there is no indication in the Amended Complaint that on each occasion, Plaintiffs suffered "separate and independent" injuries such that their claims' accrual would continually restart each time a mailing was sent by Defendants. *See Pharr v. Evergreen Gardens, Inc.*, No. 03-CV-5520 (HB), 2004 WL 42262, at *2 (S.D.N.Y. Jan. 7, 2004) (finding separate accrual rule inapplicable where "allegedly unlawful rent bills" were sent each month until the present, as the injury resulting from the mailing was identical to the injury suffered the first time the landlords unlawfully increased the rent); *see also Vayani v. 146 W. 29th St. Owners Corp.*, No. 16-CV-1774 (JGK), 2017 WL 3476046, at *7 (S.D.N.Y. Aug. 11, 2017) (noting that separate accrual rule did not apply where no allegation of additional bribes, despite claims that side agreement was continually renewed)).

Plaintiffs allege that John Doe I made two contributions to the National Ramah Commission, Inc., and the Jewish Theological Seminary in 1995 and 2008 as a result of the Defendants' continued mail fraud. (*See* Am. Compl. ¶¶108, 109.) The very latest date on which it could be said that John Doe I's Civil RICO claim began to accrue is 2008. Whether or not he should have been on inquiry notice in 1995 when he made his first contribution is not relevant. In light of his 2004 Email, by the time John Doe I made his contribution in 2008, he knew that the brochures' claims that Camp Ramah was a "safe have" for young boys was incorrect, that administrators of the Camp were aware of his assault, and he had already informed them that he thought they were negligent for their conduct. (*See* Casher Decl., Ex. C.) At that time, John Doe I had sufficient information at his disposable that would have led a reasonable person to investigate a potential Civil RICO claim. His claim thus began to accrue in 2008 (at the very latest) and expired in 2012. His claim is time-barred.

As Plaintiffs have not opposed this portion of Defendants' Motion, they wholly failed to demonstrate that they would otherwise be entitled to equitable tolling of the statute of limitations.

*See Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) (burden "lies with plaintiff"); *Haining Zhang v. Schlatter*, 557 F. App'x 9, 11-12 (2d Cir. 2014) (summary order); *Upadhyay v. Sethi*, 848 F. Supp. 2d 439, 445 (S.D.N.Y. 2012) (noting that "[e]quitable tolling is an extraordinary measure" and that [p]laintiff bears the burden of demonstrating" entitlement to the doctrine). Moreover, Plaintiff's arguments for tolling the Title IX statute of limitations would fail to save their Civil RICO claims, even if the Court chose to apply them here, as such arguments would fail for the reasons articulated, *supra* I.B.2-3.

Plaintiffs fail to identify any injuries that John Doe II suffered by the Defendants' alleged mail fraud. There are no allegations that John Doe II contributed monies to any of the entities associated with Defendants that would further their alleged enterprise's plan to profit from the concealment of Erlich's conduct. (*See* Am. Compl. ¶¶85-135.) Plaintiffs otherwise attempt to argue that they were injured insofar as they have had to bear certain economic costs associated with the personal injuries they suffered from Erlich's sexual abuse. Such injuries are insufficient to trigger a Civil RICO claim. *See Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 612-13 (S.D.N.Y. Oct. 8, 2015) (noting "[p]ersonal damages, emotional damages, and physical damages" insufficient and collecting cases regarding same). The Civil RICO claims must be dismissed with prejudice.

The Court acknowledges the serious nature of the allegations in the Amended Complaint and is disturbed that such conduct may have been permitted to persist unabated. While the Court is perturbed by Mr. Erlich's alleged conduct and the Defendants', insofar as they failed to report him to law enforcement, perform an investigation, discipline him, or otherwise ensure that more children were not harmed by his actions, the Court is nevertheless constrained by the law. Title IX was enacted after the conduct in this case occurred. This Court cannot subvert Congress' intent because it is troubled by the facts of this case to create a cause of action that simply did not exist

at the time. Moreover, the statute of limitations clearly expired by the time the Civil RICO claims were asserted. The law dictates dismissal.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED in its entirety. Plaintiffs' Amended Complaint is dismissed with prejudice. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 17. The Clerk of the Court is further directed to terminate the action.

Dated: September 7, 2018
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge